

MICHAEL E. KIPLING  
DID:  (206) 545-0346  
kipling@kiplinglawgroup.com

September 30, 2015

The Honorable Denise L. Cote  
United States District Court Judge  
Southern District of New York  
500 Pearl Street, Room 1610  
New York, NY 10007

    Re:    *DNAML PTY, Ltd. v. Apple Inc. et al.*, 13 Civ. 6516 (DLC)  
             *Diesel eBooks, LLC v. Apple, Inc. et al.*, 14 Civ. 1768 (DLC)  
             *Abbey House Media, Inc. v. Apple, Inc. et al.*, 14 Civ. 2000 (DLC)

Dear Judge Cote:

      I am writing on behalf of non-party Amazon.com, Inc. ("Amazon") in response to the Court's Order of September 21.  The publisher defendants provided Amazon with excerpts of the expert report of Dennis Carlton that reveal information that Amazon has designated as Highly Confidential.  Amazon met and conferred with counsel for Simon & Schuster, on behalf of all the publisher defendants, but we were unable to resolve issues as to certain portions of the Carlton report.[1]

      The excerpts at issue would reveal Amazon's highly confidential proprietary business information, including: (1) Amazon's profit margins on eBooks; (2) the exact dollar amount of Amazon's eBook revenues; and (3) its seasonal and annual changes in eBook revenues.  The public disclosure of this information, which has at all times been closely held in confidence by Amazon, would significantly harm its competitive standing.  *In re Parmalat Securities Lit.*, 258 F.R.D. 236, 244 (S.D.N.Y 2009); *GoSMiLe, Inc. v. Levine*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011); *see* Declaration of Jason Davis (accompanying this letter).

      Amazon recognizes the strong presumption in favor of access to judicial documents but, under these circumstances, respectfully submits that the narrowly-tailored redactions it proposes[2] strike an appropriate balance that protects both the privacy interests of a non-party and the

---

[1] To our knowledge, the excerpts from the Carlton report are the only materials in dispute, but if similar information from Amazon is included in other papers (such as the defendants' briefing), that information should be redacted in the same manner as the Carlton report.  Plaintiffs' counsel have represented that their moving papers do not contain any material that Amazon designated as confidential.

[2] Proposed redactions will be submitted to the Court via hand delivery pursuant to its Individual Practice Rules.

The Honorable Denise L. Cote            -2-                    September 30, 2015

general presumption of public access.  *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 2015 U.S. Dist. LEXIS 42630 (S.D.N.Y. Mar. 31, 2015); *GoSMiLe, supra*; *Gardner v. Newsday, Inc.*, 895 F.2d 74, 79-80 (2d Cir. 1990).  The Court can and should redact certain information from the public record where "countervailing factors" and/or "higher values" so demand.  *Lugosch v. Pyramid Co.,* 435 F.3d 110, 124 (2d Cir. 2006).  It is well established in this Circuit that "privacy interests" are such a countervailing factor, particularly where a non-party such as Amazon is involved.  *Id.* at 120; *Gardner,* 895 F.2d at 79-80 ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.")

Amazon has *never* shared this highly sensitive competitive information with anyone outside the company; this is true even for historical information.  *See* Davis Decl., ¶¶ 3 – 4.  Indeed, the information at issue is closely held in confidence within the company; only employees with a need to know the information are provided access.  *Id.*  In some cases the data at issue directly relates to Amazon's operations in 2008 – 2012, but the precise figures are still highly sensitive because this information "may be extrapolated and interpreted to reveal [Amazon's] current strategy, strengths, and weaknesses.  It would appear that, in the hands of an able and shrewd competitor, old data could indeed be used for competitive purposes." *Zenith Radio Corp. v. Matsushita Elec.*, 529 F. Supp. 866, 891 (E.D. Pa. 1981); Davis Decl., ¶ 7.

Similar materials from Amazon were redacted by the Court in connection with the DOJ/Apple trial.  For example, according to Carlton's footnote 69, the information regarding Amazon's profit margins was derived from the document that became DX 394; in fact, DX 394 was redacted in its entirety at trial.  The data at issue regarding Amazon's eBook revenues was apparently calculated from the Highly Confidential transactional data that Amazon produced subject to protective order in the earlier eBooks litigation.  During the earlier trial, aggregate data for all retailers was included in the public record, but data that revealed revenues specific to Amazon (or any other retailer) was not publicly disclosed.

Therefore, Amazon respectfully proposes redactions that are narrowly tailored to avoid public disclosure of specific business information, which, if revealed, "may provide valuable insights into [Amazon's] current business practices that a competitor would seek to exploit."  *Louis Vuitton*, *supra*; *see also Encycl. Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998); *GoSMiLE*, *supra*, 649-50 (S.D.N.Y. 2011).[3]

---

[3] Total eBook revenues for 2008 - 2010 were publicly disclosed during the Apple trial.  As such, the specific numbers in Figure 2 and Tables 1, 3-1, and 3-2 that reveal Amazon's share of total eBook revenues (to the .1% level) will provide the missing information that Amazon's competitors could use to calculate its precise monthly eBook revenues from January 2008 – March 2010.  Davis Decl., ¶ 6.

The Honorable Denise L. Cote -3- September 30, 2015

Sincerely,

KIPLING LAW GROUP PLLC

*/s/ Michael E. Kipling*

Michael E. Kipling
Counsel for Non-Party Amazon.com, Inc.

# Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABBEY HOUSE MEDIA, INC., d/b/a BOOKSONBOARD,<br><br>   Plaintiff,<br><br> v.<br><br>APPLE INC., et al.,<br><br>   Defendants. | Civil Action No. 14 Civ. 2000 (DLC) |
| DIESEL EBOOKS, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>APPLE INC., et al.,<br><br>   Defendants. | Civil Action No. 14 Civ. 1768 (DLC) |
| DNAML PTY, LIMITED,<br><br>   Plaintiff,<br><br> v.<br><br>APPLE INC., et al.,<br><br>   Defendants. | Civil Action No. 13 Civ. 6516 (DLC) |

## DECLARATION OF JASON DAVIS
### REGARDING AMAZON'S HIGHLY CONFIDENTIAL BUSINESS INFORMATION

I, JASON DAVIS, do hereby declare:

1. I am Corporate Counsel for Kindle Content at Amazon.com. In this role, I have personal knowledge of the company's practices regarding the treatment of confidential business information, including the extent to which such information is generally known inside and

1

outside the company. I am also familiar with the measures we take at Amazon to guard the secrecy of confidential business information.

2. I have reviewed the excerpts from the expert report of Dennis Carlton that refer to Amazon. These excerpts include highly confidential information, including a calculation of Amazon's profit margins on ebooks, Amazon's ebook revenues, and changes in Amazon's ebook revenues over time.

3. The financial information used by Carlton to calculate a profit margin figure has never been made public, and in fact, it is not widely shared even within the company. The documents from which it is derived are among the most sensitive for the Kindle business, and are strictly limited in their circulation to a select group of individuals within Amazon on a need-to-know basis. Knowledge of what is in these documents is never made public.

4. The detailed transactional data used to calculate revenue information is likewise highly confidential. Amazon does not make this data public; it has never voluntarily disclosed its total ebook sales nor has it revealed its volume of sales in particular sales channels (e.g., physical versus print sales). Nor does Amazon reveal data regarding changes in its sales volumes such as year-over-year increases in volume or the size of the year-end "bump" in ebook sales.

5. Amazon produced this transactional data in the prior ebook litigation pursuant to a protective order that provided that such data would be kept strictly confidential and with the understanding that it would be used to develop market-wide data for use by the parties' experts. As was the case in the prior litigation, Amazon does not object to the use of industry-wide data that is aggregated across all retailers, but the Carlton report includes Amazon-specific information. This information is highly sensitive and derives significant value from being kept

2

confidential. Our unique ability to analyze our own data and trends is a key strategic asset, and revealing that information to Amazon's competitors and to the publishers with whom we negotiate contracts on an ongoing basis would cause competitive harm to Amazon.

6. My understanding is that total ebook revenues for 2008-2010 were publicly disclosed during the Apple trial. As such, the numbers in Figure 2 and Tables 1, 3-1, and 3-2 of the Carlton report that reveal Amazon's share of total eBook revenues (to the .1% level) will provide the missing information that Amazon's competitors could use to calculate its precise monthly ebook revenues from January 2008 – March 2010. That is why I believe it is necessary to redact Figure 2 and the Tables so as to obscure the precise percentages.

7. The information at issue dates from 2008 – 2012, but it is nonetheless closely guarded by Amazon because it is so competitively sensitive. Amazon competes vigorously today in the ebook market segment just as it did in 2009, and it faces many of the same competitors. On behalf of Amazon, I continue to negotiate with the same group of publishers as in 2008 – 2012. The detailed information in the Carlton report regarding Amazon's prior ebook margins and revenues can be extrapolated to estimate Amazon's current performance, its strengths and weaknesses. Of course the ebook market has evolved since 2009, but the disclosure of detailed information regarding Amazon's performance in 2008 – 2010 would give an unfair advantage to its competitors and the companies with whom it negotiates ebook contracts today and in the future.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Seattle, Washington on September 30, 2015.

_____
Jason Davis

3